UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
|       Plaintiff, | : Civil Action No. 23-cv-8316 |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| FIESTA RESTAURANT GROUP, INC., | : **SECURITIES EXCHANGE ACT OF** |
| STACEY RAUCH, NICHOLAS | : **1934** |
| DARAVIRAS, SHERRILL KAPLAN, | : |
| ANDREW RECHTSCHAFFEN, NICHOLAS | : **JURY TRIAL DEMANDED** |
| P. SHEPHERD, NIRMAL K. TRIPATHY, | : |
| and PAUL TWOHIG, | : |
|       Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Fiesta Limited ("Fiesta or the "Company") and the members Fiesta's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Fiesta by affiliates of Garnett Station Partners, LLC, a New York-based principal investment firm ("Garnett Station").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 11, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Fiesta Merger Sub, LLC ("Merger Sub"), a wholly owned subsidiary of Fiesta Holdings, LLC ("Parent"), will merge with and into Fiesta, with Fiesta surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 6, 2023 (the "Merger Agreement"), each Fiesta stockholder will receive $8.50 in cash (the "Merger Consideration") for each Fiesta share owned. Merger Sub and Parent are both affiliates of Garnett Station.

3. As discussed below, Defendants have asked Fiesta's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Fiesta's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Fiesta stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Stacey Rauch has served as a member of the Board since 2012 and is Founder, and is the Chair of the Board.

11. Individual Defendant Nicholas Daraviras has served as a member of the Board since April 2011.

12. Individual Defendant Sherrill Kaplan has served as a member of the Board since November 2018.

13. Individual Defendant Andrew Rechtschaffen has served as a member of the Board since February 2020.

14. Individual Defendant Nicholas P. Shepherd has served as a member of the Board since April 2017.

15. Individual Defendant Nirmal K. Tripathy has served as a member of the Board since January 2023.

16. Individual Defendant Paul Twohig has served as a member of the Board since February 2017.

17. Defendant Fiesta is a company that is incorporated pursuant to the laws of the State of Delaware and maintains its principal offices at 14800 Landmark Boulevard, Suite 500, Dallas, Texas 75254. The Company's stock trades on the NASDAQ Global Select Market under the symbol "FRGI."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20. Fiesta, together with its subsidiaries, owns, operates, and franchises fast-casual restaurants. It operates its fast-casual restaurants under the Pollo Tropical brand. The Company's Pollo Tropical restaurants offer fire-grilled and citrus marinated chicken, and other freshly prepared tropical inspired menu items. The Company owns Pollo Tropical restaurants in Florida and franchised Pollo Tropical restaurants in the Puerto Rico, Panama, Guyana, Bahamas, Ecuador, and Florida. Fiesta was incorporated in 2011 and is based in Dallas, Texas.

21. On August 7, 2023, the Company announced the Proposed Transaction:

> DALLAS & NEW YORK--(BUSINESS WIRE)--Fiesta Restaurant Group, Inc. ("Fiesta" or the "Company") (NASDAQ: FRGI), parent company of the Pollo Tropical® restaurant brand, and Authentic Restaurant Brands ("ARB"), a portfolio company of Garnett Station Partners, LLC ("Garnett Station" or "GSP"), a New York-based

principal investment firm, today announced that they have entered into a definitive agreement under which a wholly owned subsidiary of ARB will acquire the Company in an all cash transaction.

ARB is a holding company with a portfolio of powerhouse, iconic regional food and beverage brands, with extraordinary customer brand loyalty and rich, authentic stories. Current brands include Primanti Bros Restaurant & Bar, P.J. Whelihan's Pub & Restaurant and Mambo Seafood. ARB is led by industry veterans including Chairman Alex Macedo and CEO Felipe Athayde. Upon closing the transaction, Fiesta will operate as a privately held company and Pollo Tropical will remain based in Miami, FL. Fiesta's leadership team will continue to operate Pollo Tropical as an independent brand within the ARB platform.

Under the terms of the definitive merger agreement, which has been unanimously approved by Fiesta's Board of Directors, Fiesta common stockholders will receive cash consideration of $8.50 per share.

"Our Board formed a Special Committee comprising independent directors that worked with outside advisors and conducted a comprehensive review of a wide range of strategic alternatives to maximize shareholder value," said Stacey Rauch, Fiesta's Chair of the Board of Directors. "The Special Committee and, ultimately, the full Fiesta Board of Directors, determined that this transaction delivers significant, immediate and certain value to Fiesta stockholders while providing Pollo Tropical the scale, resources and flexibility for continued success as part of a private company."

Dirk Montgomery, Fiesta Restaurant Group President and Chief Executive Officer, said, "The transaction validates the actions we have taken to position Pollo Tropical in our markets, enhance the guest experience and improve performance across our footprint. With this transaction, Fiesta will be better positioned financially and operationally to advance our mission of providing great food and hospitality to our guests. Garnett Station has a proven track record of successfully identifying and partnering with iconic, regionally focused brands to help accelerate their growth. We look forward to working closely with Alex, Felipe and the rest of the Garnett Station and ARB teams and to benefiting from their extensive restaurant, digital and analytical expertise as we focus on supporting the success of our brand, franchisees and people."

"We have been fans of Fiesta and their Pollo Tropical restaurants for some time," said Alex Macedo, Chairman of Authentic Restaurant Brands. "Pollo Tropical restaurants are a mainstay on the dining scene throughout Florida, and we are confident that ARB is a perfect partner to harness the power of the brand for the future."

"Fiesta and Pollo Tropical restaurants are a natural fit into ARB's existing portfolio," said Matt Perelman, Managing Partner and Co-Founder of Garnett Station Partners. "Pollo Tropical restaurants have a storied heritage and a deep-rooted connection with their local communities that perfectly align with ARB's ethos and value proposition. ARB looks forward to working with Dirk and Fiesta's leadership."

**Transaction Details**

The transaction is expected to be completed in the fourth quarter of 2023 and is subject to approval by Fiesta's stockholders, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as well as other customary closing conditions. The definitive merger agreement also includes a 30-day "go shop" period that will allow the Company to affirmatively solicit alternative proposals from interested parties.

The transaction is not subject to a financing contingency and affiliates of Jefferies Financial Group Inc. and AREX Capital Management, LP and its affiliated investors, who together own or control approximately 30% of the Company's outstanding shares, have each entered into a voting agreement pursuant to which they have agreed, among other things, to vote their respective shares of common stock of Fiesta in favor of the transaction.

In a separate press release, Fiesta announced its results for the second quarter of 2023. The Company's earnings press release can be found on the Company's investor relations website at www.frgi.com/investor-relations. In connection with the transaction, Fiesta will not host an earnings conference call.

**Advisors**

Jefferies LLC is acting as lead financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal counsel to Fiesta in connection with the proposed transaction. Houlihan Lokey Capital, Inc. is acting as financial advisor to the Special Committee of the Fiesta

> Board of Directors. Guggenheim Securities is serving as lead financial advisor and Kirkland & Ellis LLP is acting as legal counsel to ARB and Garnett Station. William Blair & Company, LLC also is serving as a financial advisor to the Board of Directors of ARB.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Fiesta's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23. On September 11, 2023, Fiesta filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Fiesta management and relied upon by Houlihan Lokey in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in May and

7

August 2023 (collectively, the "Company Projections") and provided them to the Board and Houlihan Lokey with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Fiesta management provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

>Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Houlihan Lokey's Financial Analyses*

29. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the companies selected by Houlihan Lokey for the analysis; and (ii) the inputs and assumptions underlying the selection and application of the ranges of multiples of 6.25x to 7.25x to Fiesta's LTM Adjusted EBITDA; 4.50x to 5.50x to Fiesta's estimated Adjusted EBITDA for fiscal year 2023; 3.75x to 4.75x to Fiesta's estimated Adjusted EBITDA for fiscal year 2024.

30. With respect to Houlihan Lokey's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for the transactions selected by Houlihan Lokey for the analysis; and (ii) the inputs and assumptions underlying the selection and application of the range of multiples of 7.00x to 9.00x to Fiesta's LTM Adjusted EBITDA.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the inputs and assumptions underlying the range of perpetual growth rate of 0.0% to 2.0%; (ii) the inputs and assumptions underlying the discount rates ranging from 16.0% to 18.0%; (iii) the weighted cost of capital of the Company; (vi) the terminal value of the Company, if estimated by Houlihan Lokey; (v) the Company's net debt or other non-equity items, if used by Houlihan Lokey; and (vi) the Company's diluted shares outstanding.

32. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Fiesta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Fiesta, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Fiesta, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Fiesta, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 20, 2023                    **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*